IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

TRUSTEES OF THE NATIONAL        *
AUTOMATIC SPRINKLER             *
INDUSTRY PENSION FUND
                                *

        Plaintiff,               *       Case No.: GJH-16-2733
v.
                                 *
EDWARD J. MATTHEWS, INC., *et al.*,
                                 *
        Defendants.
                                 *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Trustees of the National Automatic Sprinkler Industry Pension Fund (the "Fund") bring this action against Defendants Edward J. Matthews, Inc. ("EJMI") and Edward J. Matthews, Jr. under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 *et seq.* Following Defendants' failure to answer or otherwise defend in this action, the Clerk of the Court entered default against EJMI and Matthews on December 9, 2016. ECF No. 9. Now pending before the Court is Plaintiff's Motion for Default Judgment against EJMI and Matthews pursuant to Fed. R. Civ. P. 55. ECF No. 8. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Plaintiff's Motion for Default Judgment is granted. Judgment is entered against Defendants in the total amount of $894,284.44.

## I. BACKGROUND[1]

The Fund is a multiemployer employee pension benefit plan as those terms are defined in ERISA, 29 U.S.C. §§ 1002(2), (3) and (37). ECF No. 1 ¶ 1. The Fund is established and maintained according to the provisions of the Restated Agreement and Declaration of Trust and by the Collective Bargaining Agreements ("CBAs") between local unions of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada AFL-CIO ("United Association") and individual employers such as EJMI. *Id.* The Fund is administered at 8000 Corporate Drive, Landover, Maryland. *Id.*

Defendant EJMI was incorporated in the State of New York and has an office located in Troy, New York. *Id.* ¶ 2. Although EJMI's corporate status was suspended in or around 2015, EJMI continues to operate as a business entity in New York, transacting business as a contractor or subcontractor in the sprinkler fitting industry. *Id.* At all times relevant to this action, EJMI was an "employer in an industry affecting commerce," as those terms are defined in ERISA, 29 U.S.C. § 1002(5), (9), (11), and (12). *Id.* Matthews is the owner of EJMI and serves as its President. *Id.; see also* ECF No. 8-5; ECF No. 8-13.

Beginning in or before 1980, EJMI obligated itself to contribute to the Fund by signing a series of Collective Bargaining Agreements ("CBAs") between Local Union No. 669 of the United Association ("Local 669") and the National Fire Sprinkler Association, Inc. *Id.* ¶ 6. The CBAs established the terms and conditions of employment for EJMI's employees who were engaged in the installation, service, repair and maintenance of fire sprinkler systems. *Id.* On March 18, 2010, EJMI renewed this obligation, signing an "Assent and Interim Agreement"

---

[1] The following facts are taken from the Complaint, ECF No. 1, and Plaintiff's memorandum and exhibits in support of the Motion for Default Judgment, ECF No. 8.

2

binding it to the current CBA between Local 669 and sprinkler industry employers. ECF No. 8-2 ¶ 2; *see also* ECF No. 8-5.

Pursuant to this agreement, EJMI agreed to contribute to the Fund on behalf of its employees. ECF No. 1 ¶ 7; *see also* ECF No. 8-2 ¶ 3, ECF No. 8-6 at 30-31.[2] As a signatory, EJMI was also bound to the Fund's governing documents, including the Restated Agreement and Declaration of Trust, and the Rules and Regulations of the National Automatic Sprinkler Industry Pension Plan ("the Plan"). ECF No. 1 ¶ 7; *see also* ECF No. 8-2 ¶ 4.

In June 2011, Local 669 informed the Fund that EJMI had gone out of business and had stopped contributing to the Fund. ECF No. 1 ¶ 8; ECF No. 8-2 ¶ 5. Subsequently, in or around June 2015, the Fund became aware that EJMI and Matthews were operating a business in Local 669's jurisdiction that performed work of the type for which it was previously obligated to contribute to the Fund. ECF No. 1 ¶ 9; ECF No. 8-2 ¶ 6. Although EJMI's prior CBA with Local 669 had expired on March 31, 2013, it has not entered into a new agreement. ECF No. 1 ¶¶ 8, 9. Thus, the resumption of work occurred without EJMI renewing its obligations to contribute to the Fund. *Id.* Based on these facts, the Fund determined that EJMI had experienced a complete withdrawal from the Fund, as defined in ERISA, 29 U.S.C. § 1383(b)(2). *Id.*; *see also* ECF No. 8-2 ¶ 8.

On December 22, 2015, the Fund sent a letter to EJMI and Matthews, notifying them that EJMI was subject to withdrawal liability in the amount of $727,596.00, payable in a lump sum or in forty-one (41) quarterly payments of $24,059.65 and one final payment of $11,930.89. ECF

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

No. 1 ¶ 10; *see also* ECF No. 8-10.[3] However, EJMI failed to pay the withdrawal liability payments when due. ECF No. 1 ¶ 12. Thus, on February 26, 2016, the Fund sent notice to Matthews at two addresses that it had not received the first installment. *Id.*; *see also* ECF No. 8-11. The letters were returned to the Fund's counsel's office marked, "Return to Sender - Refused - Unable to Forward." ECF No. 1 ¶ 13. On April 21, 2016, the Fund sent Matthews a second notice, reiterating that it still had not received the first installment payment. *Id.* ¶ 14; *see also* ECF No. 8-12. By May 1, 2016, the deadline for the second quarterly withdrawal installment payment had passed without the Fund receiving either the first or second quarterly installment payments. ECF No. 1 ¶ 15.

On May 17, 2016, the Fund received a letter from EJMI dated May 12, 2016, stating "[EJMI] hereby appeals the above-mentioned notification." *Id.* ¶ 16; *see also* ECF No. 8-13. EJMI further stated that "[w]e were signatory with Local 669 for many years…[w]e wish to become signatory with Local 669, once again." ECF No. 8-13. The letter was printed on EJMI letterhead and signed by Matthews in his role as President. *Id.*

In a letter dated July 6, 2016, the Fund responded, notifying EJMI and Matthews that their appeal was untimely, citing 29 U.S.C. § 1399(b)(2)'s requirement that any request for review be filed no later than 90 days after the employer received notice of withdrawal liability from the pension fund. ECF No. 1 ¶ 17; *see also* ECF No. 8-14. Because EJMI was notified on December 28, 2015, any response was required on or before March 28, 2016. *Id.* The letter stated that although EJMI had indicated in its prior letter that it intended to re-sign a CBA with Local 669, it was the Fund's understanding that subsequent discussions with Local 669 had not led to the re-signing of a CBA. ECF No. 8-14 at 3.

---

[3] 29 U.S.C. § 1399(b) provides that "[a]s soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall (A) notify the employer of (i) the amount of the liability, and (ii) the schedule for liability payments, and (B) demand payment in accordance with the schedule."

4

Therefore, the Fund informed EJMI that it was in default and that its withdrawal liability would be accelerated pursuant to ERISA, 29 U.S.C. § 1399(c)(5)(A). *Id.*[4] Thus, the Fund requested that EJMI pay the total outstanding withdrawal liability, $727,596.00, plus interest within ten days. ECF No. 1 ¶ 17; *see also* ECF No. 8-14 at 3.

Plaintiff filed the instant Complaint against EJMI and Matthews on August 1, 2016. ECF No. 1. Following Defendants' failure to answer or otherwise defend in the action, Plaintiff filed a Motion for Clerk's Entry of Default against Defendants on October 11, 2016, ECF No. 7; and the Clerk of the Court entered default against EJMI and Matthews on December 9, 2016. ECF No. 9. Plaintiff also concurrently filed a Motion for Default Judgment, along with an accompanying memorandum and exhibits. ECF No. 8. Neither EJMI nor Matthews have entered an appearance or otherwise defended in this matter, and the time to respond to Plaintiff's Motion for Default Judgment has passed. The Court has reviewed the record and relevant authorities, and now grants the Motion for Default Judgment for a total amount of $894,284.44, representing $ 727,596.00 in withdrawal liability, $16,977.24 in interest accrued at the rate of 3.5% per annum from the date the first payment was due, through October 1, 2016 and continuing to accrue through the date of payment, $145,519.20 in liquidated damages, and $4,192.00 in attorneys' fees and costs, pursuant to ERISA, 29 U.S.C. § 1132(g)(2) and the terms of the Plan.

## II. STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012).

---

[4] The Fund states that acceleration of withdrawal liability is also permitted pursuant to the Plan. ECF No. 8-2 ¶ 17.

Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328 at \*2 (D. Md. Oct. 25, 2011) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422; *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (noting that "[t]he defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact," which provide the basis for judgment). Upon a finding of liability, "[t]he court must make an independent determination regarding damages . . ." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013). Fed. R. Civ. P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

## III. DISCUSSION

The Court has subject matter jurisdiction over this action pursuant to ERISA, 29 U.S.C. §§ 1132 and 1451(c). Personal jurisdiction and venue are proper under 29 U.S.C. §§ 1132(e)(2), 1451(d), as the Fund is administered in Landover, Maryland. *See Trustees of Nat. Automatic*

*Sprinkler Indus. Pension Fund v. Best Automatic Fire Prot., Inc.*, 578 F. Supp. 94, 95 (D. Md. 1983).

Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Camelot Constr., Inc.*, No. 1:14-CV-161-LMB-TRJ, 2015 WL 13050031, at *3 (E.D. Va. Apr. 14, 2015). "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a).

"Employer" is defined broadly under ERISA as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan..." 29 U.S.C.§ 1002(5). "Person" in turn, is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

Pursuant to 29 U.S.C. § 1383(b)(2), a complete withdrawal occurs when an employer "ceases to have an obligation to contribute under the plan," and the employer "resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption." 29 U.S.C. § 1383(b)(2)(B). This specific withdrawal provision applies only to employers who participate in plans that "primarily cover[] employees in the building and construction industry" and "substantially all of the employees" for whom the employer has an obligation to contribute perform work in that industry. 29 U.S.C. § 1383(b)(1).

Here, the building and construction industry provision applies to EJMI because their covered employees were engaged in "the installation, service, repair, and maintenance of fire sprinkler systems" and the Plan it participated in primarily covers employees in the building and construction industry. ECF No. 1 ¶ 6; ECF No. 8-8 at 96. The materials before the Court further reflect that EJMI triggered the imposition of withdrawal liability when it ceased covered operations and contribution payments in 2011 and subsequently restarted operations in the same jurisdiction in 2015, without renewing its CBA with Local 669 or making any other arrangements to honor its obligations to the Fund. ECF No. 1 ¶¶ 8, 9.

EJMI's corporate structure at the time it restarted its operations is unclear. The Fund alleges that EJMI renewed it operations on or before June 2015 and that sometime in 2015 the State of New York suspended EJMI's corporate charter. ECF No. 1 ¶¶ 2, 9. The Fund further alleges that Matthews continues to operate the business as a sole proprietorship. *Id.* ¶ 22. Regardless of EJMI's specific business model, it would still be considered an employer within the meaning of ERISA, which includes in its definition of "employer" any person, including an individual, corporation or unincorporated organization, "acting directly as an employer... in relation to an employee benefit plan." 29 U.S.C.§ 1002(5), (9).[5]

Thus, as set forth in the Complaint and exhibits accompanying the Motion for Default Judgment, EJMI effected a complete withdrawal pursuant to 29 U.S.C. § 1383(b)(2), ECF No. 1 ¶ 9, and is subject to withdrawal liability in the total amount of $727,596.00.[6] ECF No. 1 ¶ 33. Further, EJMI failed to make the quarterly payment due to the Fund on February 1, 2016 under

---

[5] The Fund cites 29 U.S.C. § 1398 for the proposition that EJMI "remain[s] liable to the Fund, notwithstanding any change to its corporate status." ECF No. 1 ¶ 21. The Court does not read 29 U.S.C. § 1398, which discusses situations where a withdrawal is considered *not* to have occurred, as applicable to the facts of this case. However, as discussed above, the Court agrees with the Fund's argument that a change to EJMI's corporate status does not absolve them of liability.

[6] Plaintiff provides sufficient documentation for the calculation of this amount in the form of the December 2015 notice letter and attached calculation from the Fund's actuary. ECF No. 8-10.

8

the payment schedule established in the Fund's initial letter, nor did they cure that failure within 60 days of their receipt of the April 21, 2016 late payment notice from the Fund, 29 U.S.C. § 1399(c)(5), despite their obligation to do so under 29 U.S.C. § 1145 and the Plan. ECF No. 1 ¶¶ 10, 14, 25; *see also* ECF No. 8-2 ¶ 17.

In addition to finding EJMI liable, the Fund requests that the Court also hold Matthews personally responsible for the withdrawal liability. The Fund argues that this is appropriate under two legal theories: first, because Matthews is operating the business as a sole proprietorship and second, because Matthews failed to observe corporate formalities, and, thus, the Court should pierce EJMI's corporate veil and hold Matthews, EJMI's sole owner, personally liable for EJMI's debts. ECF No. 1 ¶ 22.

A sole proprietorship is the most basic business structure, consisting of an individual operating a business in which he or she "owns all the assets, owes all the liabilities, and operates in his or her personal capacity." 1 Fletcher Cyclopedia of the Law of Corp. § 23 (2016). "A sole proprietor is personally liable for the debts of the business." *Id.* Here, the Fund has alleged that Matthews is the President and sole owner of EJMI, and continues to operate it as a business, despite New York's suspension of its corporate status. ECF No. 1 ¶¶ 2, 19, 22. Therefore, the Court finds that the Fund has sufficiently alleged that Matthews is operating EJMI as a sole proprietorship, and thus, is personally liable for the debts of the business.[7]

The failure of an employer to make a withdrawal liability payment is to be treated in the same manner as a delinquent contribution under 29 U.S.C. § 1145. 29 U.S.C. § 1451(b); *see also Bd. of Trustees Sheet Metal Workers' Nat. Pension Fund v. Columbus Show Case Co.*, No. 1:14-CV-478, 2014 WL 3811252, at *3 (E.D. Va. Aug. 1, 2014). 29 U.S.C. § 1132(g)(2) provides that

---

[7] Having found Matthews liable as the owner and operator of a sole proprietorship, the Court need not address the Fund's second theory of liability.

9

in any action brought to enforce the payment of delinquent contributions, and in which a judgment in favor of the plan is awarded, the court shall award the plan:

- (A) the unpaid contributions,
- (B) interest on the unpaid contributions,
- (C) an amount equal to the greater of—
    - i. interest on the unpaid contributions, or
    - ii. liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
- (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
- (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 686 (D. Md. 2013).

In addition to the withdrawal liability of $727,596.00 discussed above, EJMI and Matthews owe $16,977.24 in interest, accrued from the date due through October 1, 2016 and continuing at an annual rate of 3.5%.[8] ECF No. 1 ¶ 34; ECF No. 8-1 at 1. EJMI and Matthews further owe $145,519.20 in liquidated damages, equal to twenty percent of the delinquent withdrawal liability. *See* ECF No. 1 ¶ 35; 29 U.S.C. § 1132(g)(2)(C)(ii).

Finally, the Fund requests $4,192.00 in attorneys' fees and costs. ECF No. 8-1 at 3. In support of this figure, the Fund attaches the Declaration of Dinah Leventhal, a partner at the firm O'Donoghue and O'Donoghue LLP, along with a billing statement. ECF No. 8-3; 8-15. Leventhal attests that she has been a member of the District of Maryland Bar since 1997 and that an associate, Jacob Szewczyk, is a 2015 law school graduate. *Id.* ¶¶ 1-3. Leventhal requests a

---

[8] If collection takes more than a year, the interest rate may change pursuant to the terms of the Plan. ECF No. 8-8 at 103 ("For each succeeding twelve (12) month period that any amount in default remains unpaid, interest will be charged on the unpaid balance (including accrued interest) at the prime rate in effect on the anniversary date of the date as of which the initial interest rate was determined.").

10

rate of $310 per hour for her work, $150 per hour for Szewczyk and $122 per hour for paralegal time. These hourly rates are consistent with the rates set forth in this District's Local Rules. *See* Local Rule App. B(3) (D. Md. 2016).[9] The Court has reviewed the time entries — which are broken down into date, attorney, narrative of the task, hours expended, and fees charged — and finds the time expended, 16.5 hours, to be reasonable. ECF No. 8-15; *see First Bankers Corp. v. The Water Witch Fire Co. Inc.*, No. CIV.A. RDB-09-975, 2010 WL 3239361, at *1 (D. Md. Aug. 16, 2010) ("When…the applicant for a fee has carried [its] burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled.") (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). Thus, Plaintiff is awarded $3,252.00 in attorneys' fees.

The record also substantiates the following expenses: $540 for out-of-state service of process and $400 for filing fees. ECF No. 8-16, ECF No. 8-3 at 3. Thus, Plaintiff is awarded an additional $940.00 in costs.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment, ECF No. 8, is granted. A separate Order follows.

Date: July 31, 2017

GEORGE J. HAZEL
United States District Judge

---

[9] Leventhal does not allege that Szewczyk has been admitted to the bar of any jurisdiction. However, the rate charged for Szewczyk is within the range of rates charged for paralegals and law clerks.